No. 24-2174

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

FREE SPEECH COALITION, INC., et al.,
                  *Plaintiffs-Appellees*,

v.

TODD ROKITA, in his official capacity as the
Attorney General of the State of Indiana,
                  *Defendant-Appellant.*

On Appeal from the United States District Court for the
Southern District of Indiana, No. 1:24-CV-00980-RLY-MG,
The Honorable Richard L. Young, Judge

**DEFENDANT-APPELLANT'S REPLY IN SUPPORT OF EMERGENCY
MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

KATELYN E. DOERING
Deputy Attorney General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for Defendant-Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT .........................................................................................................................1

I.　　The Supreme Court Permitted a Nearly Identical Texas Law to Take Effect ......1

II.　　Indiana's Law Is a Legitimate Exercise of the State's Power To Protect Minors ...............3

III.　　The Act Is Not Facially Invalid ........................................................................7

IV.　　The Equities Favor a Stay ................................................................................8

CONCLUSION.......................................................................................................................9

# TABLE OF AUTHORITIES

**CASES**

*ACLU v. Johnson*,
  194 F.3d 1149 (10th Cir. 1999) ................................................................................5

*ACLU v. Mukasey*,
  534 F.3d 181 (3d Cir. 2008) ......................................................................................5

*Am. Booksellers Found. v. Dean*,
  342 F.3d 96 (2d. Cir. 2003) .......................................................................................5

*Ashcroft v. ACLU*
  542 U.S. 656 (2004) ........................................................................................ passim

*Barnes v. Glen Theatre, Inc.*,
  501 U.S. 560 (1991) ..................................................................................................6

*Bevis v. City of Naperville*,
  85 F.4th 1175 (7th Cir. 2023) ................................................................................2, 3

*Brown v. Kemp*,
  86 F.4th 745 (7th Cir. 2023) ......................................................................................7

*Courthouse News Serv. v. Brown*,
  908 F.3d 1063 (7th Cir. 2018) ...................................................................................2

*Ent. Software Ass'n v. Blagojevich*,
  469 F.3d 641 (7th Cir. 2006) .....................................................................................5

*Frank v. Walker*,
  769 F.3d 494 (7th Cir. 2014) .................................................................................1, 2

*Free Speech Coal. v. Paxton*,
  95 F.4th 263 (5th Cir. 2024) ......................................................................................4

*Free Speech Coalition v. Paxton*,
  144 S. Ct. 1473 (2024) ...............................................................................................1

*Free Speech Coalition v. Paxton*,
  No. 23-1122 (U.S.) .....................................................................................................1

*Ginsberg v. New York,*
  390 U.S. 629 (1968) ...................................................................................................3

*Ginzburg v. United States*,
  383 U.S. 463 (1966) ...................................................................................................8

## Cases [cont'd]

*Hilton v. Braunskill*,
 481 U.S. 770 (1987) ..........................................................................................8

*K.C. v. Individual Members of Medical Licensing Bd. of Ind.*,
 2024 WL 1212700 (7th Cir. Mar. 21, 2024) ....................................................2

*Maryland v. King*,
 567 U.S. 1301 (2012) ....................................................................................2, 3

*Mazurek v. Armstrong*,
 520 U.S. 968 (1997) (per curiam) ....................................................................2

*Moody v. NetChoice, LLC*,
 144 S. Ct. 2383 (2024) ......................................................................................7

*Nken v. Holder*,
 556 U.S. 418 (2009) ..........................................................................................1

*PSInet v. Chapman*,
 362 F.3d 227 (4th Cir. 2004) ............................................................................5

*Reno v. Am. Civil Liberties Union*,
 521 U.S. 844 (1997) ......................................................................................4, 5

*Shaffer v. Globe Prot., Inc.*,
 721 F.2d 1121 (7th Cir. 1983) ..........................................................................1

*Turner Broad. Sys., Inc. v. FCC*,
 512 U.S. 622 (1994) ..........................................................................................6

*United States v. O'Brien*,
 391 U.S. 367 (1968) ..........................................................................................6

*United States v. Playboy Ent. Group*,
 529 U.S. 803 (2000) ..........................................................................................4

*United States v. Texas*,
 144 S. Ct. 797 (2024) ........................................................................................2

*Williams-Yulee v. Florida Bar*,
 575 U.S. 433 (2015) ..........................................................................................5

*Zivotofsky v. Clinton*,
 566 U.S. 189 (2012) ..........................................................................................3

**RULES**

Sup. Ct. R. 14.1(a) ..................................................................................................4

**STATUTES**

Ind. Code § 2-5-1.1-16 ...........................................................................................6

Ind. Code § 2-5-1.1-17 ...........................................................................................6

# ARGUMENT

**I.     The Supreme Court Permitted a Nearly Identical Texas Law to Take Effect**

The Pornographers identify no substantive reason why Indiana's age-verification law should be treated differently than Texas's, which the Supreme Court allowed to take effect while litigation continues. *See Free Speech Coal. v. Paxton*, 144 S. Ct. 1473 (2024). Instead, the Pornographers stress that the Supreme Court's decision is not a merits ruling. *See* Resp. 22–23. But Indiana is not asking for a merits ruling either; it is asking this Court to let its law take effect pending appeal. The Fifth Circuit granted Texas the same relief that Indiana now seeks from this Circuit, and the Supreme Court declined to disturb the Fifth Circuit's disposition. The Supreme Court did not think Texas's law so imperiled the First Amendment as to require halting enforcement. There is no reason for this Court to reach a different conclusion.

Unable to distinguish the result, the Pornographers speculate about the Supreme Court's possible rationales for allowing Texas to enforce its law. First, they observe that Texas argued the Pornographers had "waited too long to seek relief" in the Texas litigation. Resp. 24–25. But they disputed Texas's delay allegation, *see* Reply in Support of Application for a Stay 12–16, *Free Speech Coal. v. Paxton*, No. 23-1122 (U.S.), and cannot show that delay motivated the Supreme Court's decision. To the extent delay did influence the result, similar delays here support a stay. The Pornographers waited nearly three months after Indiana enacted its law to seek injunctive relief. "Such a delay is inconsistent with a claim of irreparable injury." *Shaffer v. Globe Prot., Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983) (two-month delay weighed heavily against injunctive relief).

Relatedly, staying the preliminary injunction here would not disrupt the "status quo" any more than the Supreme Court's decision to let Texas enforce its law. Resp. 25. A stay would "simply suspend judicial alteration of the status quo." *Nken v. Holder*, 556 U.S. 418, 429 (2009). It would "not 'impose' any change." *Frank v. Walker*, 769 F.3d 494, 496 (7th Cir. 2014). As this

1

Court observed in staying an injunction against another Indiana law, "[t]he state law would be in effect now but for the injunction." *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 2024 WL 1212700, at *1 (7th Cir. Mar. 21, 2024). Just because the Pornographers speed ran a challenge against the Act shortly before it took effect does not mean this Court must allow Indiana children unlimited access to hardcore pornography while litigation continues. There is an "important" public interest in "using laws enacted through the democratic process, until the laws' validity has been finally determined." *Frank*, 769 F.3d at 496.

Next, the Pornographers point out that "Texas argued" they had to meet the standard "for an injunction" rather than the standard for a stay. Resp. 25–26. Again, there is no evidence that the Supreme Court embraced that argument. *Cf. United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of applications to vacate stay) (stating the four-factor *Nken* test governs an application "to vacate" a "stay pending appeal"). Nor does it change the dynamics to assume the Supreme Court did. To uphold the preliminary injunction, this Court must conclude that *the Pornographers*—not Indiana—made "'*a clear showing*'" that they are entitled to the "'extraordinary and drastic remedy'" of a preliminary injunction. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). Indiana can demonstrate a likelihood of success on appeal by showing the Pornographers failed to satisfy their burden. *See Bevis v. City of Naperville*, 85 F.4th 1175, 1187–88 (7th Cir. 2023). If, as the Pornographers argue, the Supreme Court concluded they did not meet the standard "for an injunction" in *Paxton*, it follows the Pornographers did not meet that standard here either.

Finally, the Pornographers' suggestion that Indiana cannot establish irreparable harm, Resp. 1, 26, is spurious. "*[A]ny time* a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*,

567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (emphasis added). The Pornographers' position wrongly presumes there is no colorable argument supporting Indiana's law, even though the Supreme Court did not deem Texas's law so anathema to the First Amendment as to prohibit enforcement against pornographic websites peddling prurient materials. *Contra Bevis*, 85 F.4th at 1188 ("legislative enactments are entitled to a presumption of constitutionality"). A stay here would track with the Supreme Court's decision to allow Texas to enforce its age-verification law.

## II.     Indiana's Law Is a Legitimate Exercise of the State's Power To Protect Minors

Although this Court need not look past the Supreme Court's decision, Indiana is likely to succeed on the merits.

*Ginsberg v. New York* sets the rule for the appropriate level of scrutiny here—rational basis. 390 U.S. 629, 639 (1968). Because the Supreme Court has decided that the State may protect minors from material obscene for minors, it necessarily follows that a constitutional mechanism must exist for the State to do so. The Act is such a mechanism. It does not restrict what the Pornographers may post on their websites, nor does it bar adults from accessing the Pornographers' content. Rather, the Act merely requires adults to verify that they are adults. If a State may limit minors' access to material that is obscene for minors, as *Ginsberg* says, it necessarily follows that the State may do so in an *enforceable* way. The Act's age-verification requirement is the online equivalent of checking identification at the strip-club door.

The Pornographers would prefer that this Court rely on *Ashcroft v. ACLU* and apply strict scrutiny. But in that case, the Court assumed that strict scrutiny applied because all parties agreed that it did—it did not explain why or how Courts should decide what standard of scrutiny applies when a law limits obscenity for minors. 542 U.S. 656, 665–66 (2004). Because the Supreme Court is not a court of "first view," it does not decide "in the first instance" non-jurisdictional "issues not

3

decided below." *Zivotofsky v. Clinton*, 566 U.S. 189, 201 (2012). The Supreme Court only considers "questions set out in the petition," Sup. Ct. R. 14.1(a), and no party raised the question of the level of scrutiny. The lower courts also did not address this issue. Recognizing *Ashcroft* did not decide the level of scrutiny does not require attributing any error to the decision. *Contra* Resp. 1.

Throughout their response, the Pornographers refer to the laws in *Reno* and *Ashcroft* as "materially indistinguishable" from Indiana's law. Resp. 10, 17. That characterization ignores key differences between those laws and Indiana's age-verification law—such as serious underinclusivity issues in *Ashcroft*, where a minor could evade age-verification by using a credit card. Mot. at 11, n.4. And, in *Reno*, the law did not allow for parental consent, and applied even to material with serious social value. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 865–66 (1997). Indiana's law avoids all these concerns—it avoids "prohibitions on non-sexual material," "specifically define[s] the proscribed material," and now, unlike nearly 30 years ago when *Reno* was decided, "a viable age verification process" exists. *Free Speech Coal. v. Paxton*, 95 F.4th 263, 272 (5th Cir. 2024).

*United States v. Playboy Entertainment Group*, 529 U.S. 803 (2000), also does not apply. To begin, as the Fifth Circuit pointed out, "broadcast media has always raised medium-specific considerations that meaningfully diminish the guidance that First Amendment cases concerning broadcast media can provide in other technological contexts." *Paxton*, 95 F.4th at 276. But more importantly, the law in *Playboy* limited broadcasting certain materials to *anyone* at certain times. *Playboy*, 529 U.S. at 806. Indiana's law places no restrictions on what the Pornographers may post on their websites, or what content adults may view.

4

Like *Ashcroft,* the out-of-circuit cases the Pornographers cite (at 9) are not instructive regarding what level of scrutiny applies. All these cases assumed (without deciding) that strict scrutiny applied. *See ACLU v. Mukasey*, 534 F.3d 181, 190 (3d Cir. 2008) (no dispute over what level of scrutiny applied); *PSInet v. Chapman*, 362 F.3d 227, 233–34 (4th Cir. 2004) (same) *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 101–02 (2d. Cir. 2003) (same), *ACLU v. Johnson*, 194 F.3d 1149, 1156 (10th Cir. 1999) (same). And nearly all of these cases also assumed that nothing had changed regarding age-verification or filtering since *Reno* and *Ashcroft.* But today, twenty years after *Ashcroft*, the technology has changed dramatically—filtering is now a less effective alternative to the inexpensive, reliable option of age verification. *See* Mot. 12–13. Nor does this circuit's precedent say otherwise. Like the other circuits, this Court applied strict scrutiny because the State "concede[d]" that strict scrutiny applied. *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 646 (7th Cir. 2006). And the parties also agreed that none of the content at issue in that case was "obscene," so it was all subject to some level of First Amendment protection. *Id.* at 647.

Even if S.B. 17 were subject to strict scrutiny, the law survives. The Pornographers do not dispute that State's compelling interest in keeping minors from accessing pornography. Nor do they dispute that children currently can and do access pornography on the Pornographers' websites. The Pornographers argue that the Government's interest is suspect because the Act is underinclusive, since it does not include *every* obscene image on the internet and excludes search engines. But they never engage with the standard for when underinclusivity matters—only if it raises "doubt" about the government's pursuit of its claimed interest or "reveal[s] that a law does not actually advance a compelling interest." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 448–49 (2015) (cleaned up). The General Assembly can rationally focus a law on websites marketed as a "hub" of obscenity. Further, it makes sense to exclude search engines because search results come

5

from websites covered by S.B. 17. *See* Ex. 3, Glogoza Declaration, Dkt. 30-2 ¶¶ 4–5 (google search results for "hot sex" videos returned nearly all results from plaintiffs). So if a child attempts to click on an obscene video from a search engine, he or she will hit the age-verification wall.

Nor is there a reasonable alternative to age-verification that is as effective at protecting children from violent pornography. In *Ashcroft*, the only evidence presented showed that that filtering technology *was* more useful than the law at issue, 542 U.S. at 667, but that is not the case here. The Pornographers continue to ignore Indiana's evidence that filtering software is *not* an effective alternative to age verification. *See* Mot. 12. And Pornographers' expert reply affidavit did not address any of the challenges with content filtering that the State identified. Mot. 13.

In a parting shot against the law, the Pornographers fault Indiana's legislative record for not containing more information regarding filtering or age-verification. But legislatures are "not obligated, when enacting its statutes, to make a record of the type that an administrative agency or court does." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994). "[T]he statute's purpose of protecting societal order and morality" by shielding Indiana's children from hardcore pornography without restricting adult access—"is clear from [the Act's] text." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 568 (1991). Furthermore, Indiana law forbids using "the content of the audio or video coverage" of legislative activities "as evidence of the legislative intent, purpose, or meaning of an act enacted . . . by the general assembly," Ind. Code § 2-5-1.1-16, or "imput[ing] to the general assembly" the "motive of individual sponsors of legislation," § 2-5-1.1-17. The Pornographers inappropriately seek to "strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968).

### III. The Act Is Not Facially Invalid

The Supreme Court has given clear directions for how to evaluate a First Amendment facial challenge. A court must first determine "[w]hat activities, by what actors, do[es] the law[] prohibit or otherwise regulate," then "decide which of the law['s] applications violate the First Amendment," and then "measure them against the rest." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2398 (2024). The district court short-circuited the required analysis. It focused on the Pornographers' websites, ignoring the Act's applications to websites comprised mostly or entirely of materials obscene for all ages. Mot. 8–9. The Pornographers' response highlights the district court's error. Rather than point to a passage in the decision below discussing the Act's application to websites chock full of obscene speech, they discuss a single, hypothetical website outside the Act's scope—a blog with "hundreds of political posts" and a "single indecent image." Resp. 21. Their focus on a single, imaginary example is precisely the error the Supreme Court reversed in *Moody*.

The Pornographers retreat to the position that the Act's application to obscene websites cannot be considered. Resp. 17–19. But *Ashcroft* nowhere so holds. It simply did not address whether the statute's unconstitutional applications were substantial in relation to constitutional ones. Nor does *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023), help the Pornographers. The cited passage concerns how to "interpret[]" the scope of a challenged "amendment" under Wisconsin law. *Id.* at 777–78. Here, there is no doubt that the Act reaches all adult-oriented websites, even if those websites might run afoul of other statutes imposing different requirements. Lastly, the Pornographers' citations (at 18–19) to cases in which the Supreme Court applied the facial standard

7

to challenged statutes does not resolve how that standard applies to the Act. The district court simply did not consider all constitutional applications or measure them against the rest.

Even if one considers only the Pornographers' websites, the Act can be constitutionally applied to them. The websites enjoy no protection because they are obscene. Mot. 6–7. The Pornographers argue that the websites' overall appeal to the prurient interest cannot justify a stay because the websites contain "substantial amounts of non-obscene speech," which (they contend) means "*some* 'protected speech is being restricted here.'" Resp. 16, 19. But the Supreme Court has rejected the idea that the First Amendment protects a product that bundles together obscene and non-obscene speech, declaring that a magazine mixing both types of speech was "obscene as a whole." *Ginzburg v. United States*, 383 U.S. 463, 471 (1966). The Pornographers' insistence that *Ginzburg* "only" address evidentiary issues reads an "only" into *Ashcroft* and ignores *Ginzburg*'s express holding. Resp. 20. And their assertion (at 20) that websites are unlike magazines defies logic—magazines with many articles are more like websites with many videos than a single video.

## IV. The Equities Favor a Stay

Aside from a generic complaint about "loss of First Amendment freedoms"—a plea that assumes the Pornographers are correct on the merits—the Pornographers identify no equitable considerations counseling against a stay. Resp. 21. None exist. The Act does not prevent websites from peddling smut to adults; it just requires them to verify users are not children. The injunction, meanwhile, inflicts irreparable harm on Indiana, harmfully facilitates children's access to violent pornography, and undermines the public's interest in seeing laws enforced. With the equities so one-sided, the Court need only conclude Indiana has a "substantial case" to grant a stay—a standard Indiana surely meets. *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987).

## CONCLUSION

A stay pending appeal should be granted.

Dated: August 14, 2024

| | |
|---|---|
| Office of the Indiana Attorney General<br>IGC-South, Fifth Floor<br>302 West Washington Street<br>Indianapolis, Indiana 46204-2770<br>Telephone: (317) 232-0709<br>Fax: (317) 232-7979<br>Email: James.Barta@atg.in.gov | Respectfully submitted,<br><br>Theodore E. Rokita<br>Indiana Attorney General<br><br>By:  /s/ James A. Barta<br>James A. Barta<br>Solicitor General<br><br>Jenna M. Lorence<br>Deputy Solicitor General<br><br>Katelyn E. Doering<br>Deputy Attorney General<br><br>*Counsel for Defendant-Appellant* |

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this document contains 2,598 words.

2. This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 12-point font.

Dated: August 14, 2024
/s/ James A. Barta
JAMES A. BARTA
Solicitor General

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 14, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709
Facsimile: (317) 232-7979
James.Barta@atg.in.gov